UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-14030-CR-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL CARL FAXON,

    Defendant.
_____/

FILED by _____ D.C.

JAN 2 7 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON
EVIDENTIARY HEARING ON GOVERNMENT'S
REQUEST FOR RESTITUTION [D.E. #33]

THIS CAUSE having come on to be heard upon an Order of Reference from the

District Court for an evidentiary hearing in respect to the government's Request For

Restitution, and this Court having conducted an evidentiary hearing on January 19, 2010

and January 20, 2010, at which time this Court received testimony, evidence and

arguments of counsel, this Court recommends to the District Court as follows:

    1.    At the conclusion of the evidentiary hearing, this Court requested the parties

to provide proposed findings and conclusions to the Court. This Court stated on the record

that it did not want those findings and conclusions filed.   However, during this Court's

analysis and preparation of this Report and Recommendation, it is clear that neither party

has had the opportunity to brief their positions in respect to the questions and issues raised

in the government's request for restitution.   This Court believes that both the government

and the Defendant are entitled to have those arguments and briefs considered as part of

the record.  Therefore, this Court contacted counsel for the government and counsel for

the Defendant and advised them that at the time that they provide this Court with a copy of their proposed findings and conclusions, that they should file the originals with the Clerk so that they are in the record and available for consideration by this Court, the District Court and any appellate court which may need to review this matter at a later time.

2.    In the underlying criminal case, the Defendant was charged in a two count Indictment which was filed July 2, 2009. In Count One, the Defendant was charged with on or about June 8, 2009, in Indian River County, Florida, transporting material involving the sexual exploitation of a minor via the internet, in violation of Title 18, United States Code, Section 2252(a)(1), and in Count Two, from on or about June 8, 2009 continuing through on or about June 18, 2009, in Indian River County, Florida, did possess visual depictions by computer via interstate commerce, of a minor engaging in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

3.    The Defendant entered his guilty plea to both Counts One and Two before the undersigned United States Magistrate Judge on September 3, 2009. There was no written plea agreement in this case. There was a written stipulated factual basis which was accepted by this Court and in which the Defendant and his attorney acknowledged the facts in this case.

4.    The Defendant was sentenced by the District Court on November 16, 2009 to a period of 168 months in respect to Count One and a period of 120 months in respect to Count Two, both sentences to run concurrent with each other in the Federal Bureau of Prisons. Prior to the sentencing, the government filed a Motion To Bifurcate Sentencing Hearing [D.E. #33] in which the government requested that the Court proceed with the penalty phase of the sentencing as scheduled on November 16, 2009, but bifurcate the

restitution request of the government. The Motion To Bifurcate [D.E. #33] requested that the evidentiary hearing on the issue of restitution be set approximately sixty days from the date of sentencing. The District Court granted this motion at the time of sentencing and referred to this Court for a report and recommendation the issue of restitution.

5.     In conformance with the motion requesting that the evidentiary hearing on restitution not be set sooner than sixty days after sentencing and the District Court's granting that request, this Court set the evidentiary restitution hearing for January 19, 2010. The sixtieth day after sentencing fell on a Friday, January 15, 2010. It was anticipated this hearing would last longer than one day, which it in fact did.   This Court did not want to begin a hearing involving out of state witnesses on Friday, January 15th and not be able to conclude that matter until the following week Tuesday, January 19th since the following Monday was a federal holiday.  Therefore, the first available date after sixty days from sentencing was Tuesday, January 19, 2010.

6.     Title 18, United States Code, Section 3664(d)(5) provides that "the Court shall set a date for the final determination of the victim's losses, not to exceed ninety days after sentencing."  This portion of the statute is the time limit which this Court finds to be applicable and is referenced in the government's Motion To Bifurcate.  Based upon the foregoing, this Court is operating under the belief that the District Court must make a final determination in respect to this Court's Report and Recommendation on the issue of restitution on or before ninety days after the sentencing date of November 16, 2009.  The ninetieth day by this Court's calculation would be Sunday, February 14, 2010.  Federal Rules of Criminal Procedure Rule 45(a)(3) provides that in computing any period of time specified under the Federal Rules of Criminal Rules if the last day of the period falls on a

3

Saturday, Sunday or legal holiday, then the period runs until the next day that is not a Saturday, Sunday or legal holiday.  While this restitution issue is part of a criminal sentencing, it is not specifically addressed in the Federal Rules of Criminal Procedure. One interpretation of Rule 45(a)(3) would provide that the District Court has until Monday, February 15, 2010 to make a final decision in this matter of restitution on the record. However, should the District Court find that Rule 45(a)(3) does not govern the particular time period as set forth in the statute cited above, then the last day for the District Court to issue its order on restitution would be Friday, February 12, 2010.  See United States v. Johnson, 541 F.3d 1064 (11th Cir. 2008), United States v. Maung, 267 F.3d 1113 (11th Cir. 2001), and United States v. Rafael, 181 Fed. Appx. 900 (11th Cir. 2006).

7.    The evidentiary restitution hearing held in this matter is governed by Title 18, United States Code, Section 2259, which is referred to as the Mandatory Restitution For Sex Crimes restitution statute.  This statute, in conjunction with Title 18, United States Code, Sections 3663, 3663a and 3664, govern the substantive and procedural issues in respect to restitution in cases such as this.  The Defendant presents no evidence that the statutory provisions are not otherwise applicable to the purported victims in this case.

8.    Section 2259(b)(4) specifically states that issuance of a restitution order under this section is mandatory.  A court may not decline to issue such an order of restitution because of any economic circumstances of the defendant or any fact that the victim(s) has or is entitled to receive compensation from the proceeds of insurance or any other source.

9.    Section 2259(c) defines victim as being the individual harmed as a result of a commission of a crime under this chapter.  There are further provisions under that

4

subsection referring to victims under 18 years of age. However, the two victims in this case are over the age of 18 at this time.

10.    Section 2259(b) references enforcement of any such restitution order shall be in accordance with Sections 3663a and 3364 referenced above. Section 2259(b) also lists losses to include medical/psychological services, therapy/rehabilitation, transportation, lost income, attorney's fees/costs, and any other losses suffered by the victim as a proximate result of the offense. Title 18, United States Code, Section 3663A(a)(2) further defines a victim as being a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered.

11.    There are two victims in this matter. One victim is referred to as "Vicky" and the other is referred to as "Amy." There is no allegation that this Defendant has ever had any physical contact with either of these victims. Rather, the government's request for restitution arises out of the Defendant downloading and making available for transfer to other individuals via file sharing computer software, images of both of these victims which were available to the Defendant and others via the internet. Further, there is no question about the images of these victims meeting the definition of child pornography.

12.    This Court received testimony from Patrick Paige who is a computer forensic examiner with the Palm Beach County Sheriff's Office assigned to child pornography cases. His background, education and special training were placed in the record. Mr. Paige explained that he conducted forensic examinations of the computer hard drives seized from the Defendant pursuant to a search warrant in this case. He explained how

the Defendant's computers was using peer-to-peer file sharing software known as Limewire and Gigatrybe. These file sharing programs permitted other individuals to download files from the Defendant's computer and external hard drive.

13.    The forensic computer analysis of the Defendant's computer and external hard drive revealed numerous images of child pornography. Mr. Paige explained how this analysis takes place. The images are then run through various government databases to attempt to identify some of the children depicted in the photos and videos which were on the Defendant's computer and hard drive. The National Center For Missing And Exploited Children was contacted since they have what could be referred to as a clearing house for such information. An analysis of the pictures and videos from the Defendant's computer and hard drive revealed images from what is referred to as a "Vicky Series" and "Misty Series." The victim referred to herein as Vicky is part of the "Vicky Series" and the victim referred to herein as Amy is part of the "Misty Series." There were exhibits admitted into evidence by this Court reflecting the analysis.

14.    Dr. Randall Green next testified for the government. He is a licensed clinical psychologist practicing in the State of Oregon. His credentials and curriculum vitae were entered into evidence. This Court found him to be an expert for purposes of this hearing on the impact on a child's psychological trauma in respect to his patient who is the victim Vicky. Dr. Green testified that he first met Vicky in April of 2009. He has conducted many interviews of her and her family. He has also conducted psychological testing and obtained other material concerning her underlying case. Vicky is now 20 years old. She resides on the West Coast of the United States. Copies of Vicky's victim's statement as well as that of her mother and stepfather were admitted into evidence over hearsay

6

objections by the Defendant. This Court will address the hearsay objections later herein. Copies of Dr. Green's curriculum vitae and his initial report and analysis of his patient Vicky dated May 22, 2009 as well as the update of that dated December 2, 2009 were admitted into evidence.

15.     Dr. Green testified that based upon the information he has received directly from his patient Vicky and other sources, for Vicky to attend a hearing such as this and/or testify would result in a "re-victimization" of what she has gone through in the past. Vicky told Dr. Green that the images which are presently on the internet, some of which were downloaded by this Defendant and shared with others, were taken by her biological father when she was very young. He and her mother were divorced when Vicky was three years old in 1994. However, her biological father continued to live nearby and she had regular visitation with him until age 16 when she disclosed the sexual abuse which he had committed on her. Vicky told Dr. Green that she was sexually abused by her biological father since age 5. A majority of the abuse occurred when she was 10 to 11 years of age.

16.     Dr. Green testified that Vicky told him the sexual abuse began with her biological father exposing her to images of child pornography and children being abused in an attempt to convince her that this is normal behavior. He would have her take off her clothes, take showers with him, touch his penis, fondle him and have sexual relations with him. He would also introduce other adults into scripted sexual related scenarios, some of which were videotaped or photographed. The videos and the photographs now on the internet arise out of these instances. It is not necessary for this Court to go into any greater detail concerning the abuse by her biological father. He has since been arrested and sentenced to prison in respect to those crimes.

7

17.     Dr. Green testified that Vicky has had a lot of psychological problems in attempting to deal with these issues and is in constant fear that she will be recognized by someone in the public as being the person depicted in these child pornographic videos and photographs.  In his opinion, Dr. Green believes that Vicky will require a great deal of therapy in the future because the abuse was so egregious.  Vicky is aware that these photographs are on the internet and downloaded by many individuals.  However, there is no evidence that Vicky ever had any contact with this Defendant nor that she has ever been made aware of any specific photos/videos which this Defendant either downloaded and/or shared.  Rather, Dr. Green's testimony appears to this Court to go more towards Vicky having the generalized knowledge that these photographs/videos are out in the public domain depicting her in "horrific" scenes which are being viewed for other persons' sexual gratification in an ongoing basis.

18.     Dr. Green testified that in his opinion, Vicky's psychological damage causes her difficulty in continuing with a normal life.  She has physical problems such as migraine headaches, anxiety disorder, panic, blackouts, gastrointestinal problems, depression, sleep disorder and nightmares.  She has difficulty dealing with males in a position of authority because of what her biological father did to her.  She also has a particularized fear of people trying to contact her after her story was displayed on America's Most Wanted program.  Apparently someone has tried to locate her on "MySpace."  Further, Dr. Green is of the opinion that Vicky's fear of people watching her on line will never go away until she dies.  She is having problems forming relationships, having a career or having a family.  He views all of those as being significant and possibly insurmountable obstacles in her future.

8

19.     Dr. Green provided an estimate of future costs for psychological treatment which Vicky may have to seek in the future. Government's Exhibit No. 7 dated May 22, 2009 is Dr. Green's estimate of these costs for treatment over her lifetime. They would range from between $126,365 to $128,005.  Government's Exhibit No. 8 admitted into evidence updates those costs as of December 2, 2009 to be $166,065 to $188,705. This "update" is based upon further contact and interviews that Dr. Green has had in this case. He is also recommending residential treatment in the western section of the country closer to her home.  These costs include that residential treatment.

20.     On cross-examination, Dr. Green testified that these are the same or similar costs which have been presented to other courts where restitution has been sought by Vicky.  These costs are not based upon any particular criminal act of this Defendant. These are the costs Dr. Green has calculated based upon Vicky's psychological needs in the future and are the same costs being sought as restitution in criminal cases in other jurisdictions.

21.     Dr. Green testified that he did not know if Vicky was even notified about this particular case involving this Defendant.  The National Center For Missing And Exploited Children sends out notices to victims when defendants are identified as being involved with photos and/or videos from that victim's past abuse.  Because of the overwhelming number of notices being received by Vicky and her family, she retained an attorney to accept those notices for her.

22.     When asked on cross-examination whether or not she was aware of any specific facts concerning this Defendant in this matter, Dr. Green said that Vicky generally knows that there are a number of persons doing this, but has insulated herself from the

9

specifics. Further, Dr. Green stated that he has testified in other hearings about these very same issues involving restitution for Vicky. He testified in a courts martial in Okinawa as well as in a case in the U. S. District Court for the Northern District of Georgia.

23.    In order to keep the witnesses concerning the particular victim Vicky and the particular victim Amy all together, this Court will jump ahead and take out of chronological order the next witness so that the District Court has a full understanding of the evidence this Court received as to Vicky. This Court will then review the evidence it received concerning the victim Amy.

24.    Carol Hepburn is Vicky's attorney and testified that she is a licensed attorney in the States of Washington and Oregon. She has been practicing since 1978. She is Vicky's attorney and regularly receives notices on behalf of Vicky as her representative in respect to identification of Vicky in child pornography cases. She is operating on a contingency fee basis and is advancing costs which are reimbursed from some of the requests for restitution which have been made nationwide. Ms. Hepburn retained Dr. Green as well as a vocational expert and an economist. Her declaration was admitted into evidence in this case as well. She estimated that her fees and costs are $28,366.10 as of the date of her affidavit dated January 12, 2010.

25.    Ms. Hepburn testified that she has submitted approximately two hundred restitution requests in various courts throughout the country on behalf of Vicky. Some have been withdrawn based on settlement, some have been denied, and some are pending. Of that number, she testified that thirty-six have been granted and ninety-three to one hundred are pending. She has received on behalf of Vicky approximately $40,000 thus far.

10

Of that money, she testified she took $13,333 as fees, $10,000 went to Vicky, and the balance to costs advanced.

26.     Ms. Hepburn testified that Vicky and her mother recently attended a sentencing involving a consolidated four defendant case. Ms. Hepburn testified that she was not present, but later determined that it was a "disquieting experience" for Vicky.

27.   The next two witnesses called by the government were in respect to the victim Amy.  Dr. Joyana Silberg testified that she is a child clinical psychologist in Baltimore, Maryland.  Her professional experience and educational background was admitted into evidence.  Dr. Silberg was accepted by this Court as an expert in the area of childhood sexual abuse trauma.

28.     Dr. Silberg testified that she was contacted in the Spring of 2008 by an attorney for Amy. She was provided with a report concerning the ongoing effects of sexual abuse of which Amy had been a victim at a young age. She has personally met with Amy and discussed her condition with her in order to formulate her expert opinion which is set forth in the exhibit admitted into evidence in this case. Once again, the Defendant objected to Dr. Silberg's report and the Victim Impact Statement as being hearsay. This Court will review all of these hearsay objections in one section of this Report and Recommendation later herein.

29.   As with Vicky, Amy was not at this hearing. The information concerning Amy, as it was with Vicky, comes through the exhibits offered into evidence. Amy told Dr. Silberg that at approximately age 4 an uncle across the street from her began showing her images of child pornography and told her that it was "okay for her to do that."  He had oral and genital contact with Amy.  Also, the uncle arranged for other persons to have sexual

11

relations with Amy. Her uncle would film her as well. At approximately age 9 the uncle traded some photographs he had of Amy which were child pornography and the uncle was arrested. He has since gone to prison. Amy was then identified as a victim.

30. As Amy got older, she began receiving official notification of these photographs being on the internet and involved with people arrested possession/distribution of child pornography. Dr. Silberg's contact with Amy reflects that Amy has problems with relationships, fear of people, depression, and an inability to complete tasks. As with Vicky, Amy has learned of the distribution of photographs of her over the internet and is aware of the ongoing disclosure of these pictures by other individuals whom she does not know. She has shame and blames herself that maybe some of her photographs depicting child pornography are now being used by other adults to "groom" other minor children to attempt to have those minor children believe such acts are normal as her uncle did with her.

31. Amy has tried to go to college, but dropped out in her first semester. She has abused alcohol which has caused blackouts. Dr. Silberg discussed the battery of tests she has performed and the discussions/interviews she has had with Amy. Amy feels that she is being victimized again and again every time someone uses, views and/or shares these photographs of her. As with Vicky, Amy is frightened that someone may recognize her and expose her as being this child depicted in these photographs. Amy is having a difficult time separating appropriate use of authority at work or at school because of her uncle's position as an authority figure when he committed these acts of abuse on her. The notices from law enforcement concerning identification Amy in various child pornography cases are being sent to her attorney, Mr. Marsh.

12

32.    Dr. Silberg's opinion is that Amy needs ongoing psychotherapy and treatment for alcohol abuse. She believes that Amy will need this throughout the remainder of her life. Dr. Silberg testified that an economist, Dr. Smith, did an analysis on the costs for such future treatment. Dr. Silberg testified that she merely provided some information to Amy's attorney, Mr. Marsh, and/or Dr. Smith. However, Dr. Silberg played no part in the calculations set forth in Dr. Smith's report which this Court will review later.

33.    Dr. Silberg believes that Amy will need weekly therapy sessions and possibly more depending upon whether or not Amy is confronted in the future with more trauma relating to these images on the internet. Dr. Silberg is also including three in-patient rehabilitation stays in her estimate of treatment which was provided to Dr. Smith and Mr. Marsh.

34.    Just as in the case of Vicky, there was no evidence presented to this Court that Amy has any specific knowledge of this particular Defendant or the crimes for which he has been convicted. There is no evidence of any personal contact between this Defendant and Amy. Dr. Silberg has not even discussed this particular case with Amy. Amy did attend one hearing in a case in another jurisdiction, but has not attended any other hearings according to Dr. Silberg.

35.    Amy wanted to become a teacher or psychologist. However, based upon her present condition it is Dr. Silberg's opinion that she will not have the ability to overcome her psychological problems to the degree that she could obtain an advanced degree to permit her to be a psychologist. She may be able to, at best, become a teacher of some sort. However, Dr. Silberg does not foresee that happening any time in the future. Amy does have a child and is a single mother. Her present personal relationship with another

13

individual is not going well. In the short term, the best that Dr. Silberg believes Amy could do would be a part time job in an unskilled profession.

36.     The next witness to testify was James Marsh. He is Amy's attorney and is licensed to practice in Washington, D.C. and New York. He was retained by Amy's parents in 2006 when she was a minor because she was getting numerous notices from the National Center For Missing And Exploited Children. As with Ms. Hepburn, he is on a one-third contingent fee basis in representing Amy in various restitution proceedings throughout the country. He advanced costs which were quickly recovered early on. All of the experts retained by him have been paid from those funds as of seven months ago. The exhibit referencing his fees list approximately $17,063 in fees and costs.

37.     Mr. Marsh confirmed that in his discussions with Amy and her family, he learned the images of her abuse were taken when she was between 8 or 9 years old. He verified that she is the person depicted in these photographs in the "Misty Series." Some of the photographs from the Misty Series were photographs and/or videos which were on the Defendant's computer and external hard drive. The Defendant has not challenged the fact that some of the photos and/or videos seized from the Defendant's computer and hard drive involved both of these victims.

38.     Mr. Marsh testified that Dr. Silberg's analysis describes Amy very well. He retained Dr. Silberg to assist Amy in dealing with her issues. He also retained an economist, Dr. Smith, to calculate the "damages" sought in restitution relating to future treatment/counseling and future loss of or reduction of income to age 67. A copy of Mr. Marsh's restitution request was admitted into evidence along with a copy of Dr. Smith's

14

report. The Defendant objected to these exhibits as hearsay. These hearsay objections will be addressed later herein.

39.    Mr. Marsh testified that the calculations set forth in Dr. Smith's report were taken from information provided by Mr. Marsh and Dr. Silberg concerning Amy's future needs and employability. Dr. Smith then took this information and calculated the proposed "damages" by using government tables as referenced within his report.

40.    Dr. Smith was not present at the hearing. Mr. Marsh testified near the conclusion of the first day of this hearing that he did not believe that Dr. Smith was needed and therefore did not have him present. When this Court reconvened this hearing on the second day, Mr. Marsh was still on the witness stand. The government then advised this Court that Dr. Smith would be available by telephone "in a half-hour" should this Court have any questions. This Court declined that invitation. Mr. Marsh did not testify as to Dr. Smith's unavailability aside from his testimony he made the decision to not have Dr. Smith at the hearing.

41.    Mr. Marsh testified that he has filed some 340 restitution claims in various courts on behalf of Amy. There have been some orders entered denying restitution and some granting restitution. He estimated some 25 orders either awarding restitution or awarding a settlement of that amounts sought herein. This Court would point out that in this Court, Judge Moore entered an order awarding restitution to the government in respect to Amy's claim for restitution in United States v. Staples, 2009 WL 2827204 (S.D. Fla. 2009). Mr. Marsh estimated that in total thus far nationwide there has been received approximately $107,000.

15

42.     In testifying about Dr. Smith's report, Mr. Marsh said that the total claim for restitution is $3,367,845. This is represented by $512,681 for future treatment/counseling and $2,855,173 for lost or reduced income to age 67. This approximates the amount of damages that Judge Moore awarded in restitution in his case. The government then rested.

43.     Counsel for the Defendant presented no documentary exhibits or evidence. However, he did call the Defendant to testify. The Defendant testified that at the time of his arrest he owned a lawn business. The business has since been sold to pay household bills and there is no money left. His wife is an accountant and has worked in that capacity for ten years. He and his wife own their home in Indian River County, Florida. There was mention of five acres of raw land in Fellsmere, Florida, which is purportedly in the wife's name alone and does not have any significant value because it is "in the middle of nowhere" according to the Defendant. The Defendant confirmed that he is serving a fourteen year sentence and does not know what he will do when he gets out of prison. He has no savings or any other monies with which to pay any restitution.

44.     The applicable statute in this matter specifically addresses this issue and directs that the Defendant's economic condition and his ability or inability to pay does not enter into the decision making process of the Court in regards to restitution.

## ANALYSIS

45.     This Court first must address the hearsay objections made by the Defendant to various exhibits offered by the government. This Court has already referred to those exhibits herein above. This Court admitted the exhibits and at the time gave its specific reasons as to why the exhibits were being admitted into evidence. Therefore, this Court

16

will not reiterate those rulings as to each exhibit at this time. Nevertheless, the Defendant objects generally to any statements relating to the two victims and their families in this case as being hearsay. Those victims and their respective families did not testify at this proceeding. Additionally, the Defendant objected to any portions of the reports of Dr. Green, Dr. Silberg and Dr. Smith which may have referenced statements made to them by the victims, victims' families or other sources as hearsay. This Court admitted all of the exhibits with the proviso that even if this Court later decided to sustain a hearsay objection during its post-hearing analysis and strike an exhibit, the exhibit would be part of the record for review by the District Court and any appellate court in the future.

46.    Hearsay may be admitted at a sentencing if there are sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence. United States v. Lopez, 281 Fed. Appx. 964 (11th Cir. 2008). This sentencing was bifurcated as referenced above based upon Judge Graham's granting of the government's request. Therefore, hearsay is admissible. This Court did make findings concerning the unavailability of the witnesses and the reliability of the evidence being offered at the time that the Defendant made his various hearsay objections.

47.    In respect to the victims' statements as well as those statements of their families which are submitted as exhibits in this case, this Court finds that those statements are reliable. There is verifiable information in the record that the adults who perpetrated these acts of abuse on the respective victims, Vicky and Amy, were later charged, convicted and sentenced to prison. There is no evidence in the record to rebut this. There is also no evidence in the record to rebut the fact that each of these victims continues to suffer psychological and physical problems directly relating back to these specific instances

17

of abuse. The victims' statements and those of their families are deemed credible based upon the expert testimony received in this case by Dr. Green and Dr. Silberg in respect to their treatment of their patients who are the victims in this case.

48.     In respect to any information contained within Dr. Green's or Dr. Silberg's reports which may have come from out of court hearsay statements, this Court finds that those statements are credible. Both Dr. Green and Dr. Silberg were available for cross-examination by the Defendant. The information utilized by each of those experts in reaching their expert conclusions are found by this Court to be relevant, credible, and with sufficient basis in fact to substantiate their expert opinions. United States v. Allen, 190 Fed. Appx. 785 (11th Cir. 2006).   Additionally, any hearsay objections in respect to the exhibits relating to the testimony of Ms. Hepburn and Mr. Marsh as attorneys for the respective victims as referenced in the record, are also overruled. The information received by those attorneys were directly from their clients who are the victims and their respective families. As in the case of the experts, those statements bear credibility and are substantiated by the totality of the evidence in the record before this Court concerning the cases of abuse committed on Vicky and Amy and their resulting psychological traumas.

49.     In respect to Dr. Smith's report, at first blush, it would appear to be classic hearsay which is objectionable. However, by reviewing the exhibit it is clear that Dr. Smith obtained information from Dr. Silberg concerning her treatment of Amy as well as information from Mr. Marsh. This information relates to future treatment and loss of income based upon interviews with Amy and her family. The Eleventh Circuit Court of Appeals in United States v. Hairston, 888 F.2d 1349 (11th Cir. 1989), specifically allowed hearsay evidence by way of a letter prepared by the victim's attorney setting forth the bank's losses

18

in that particular case. The Eleventh Circuit held that hearsay evidence in a sentencing hearing, including the restitution portion of a sentencing hearing, is admissible as long as the defendant is given the opportunity to refute the evidence and the evidence bears minimal indicia of reliability. The evidence in Dr. Smith's report falls clearly within the guidelines set by the court in Hairston. This Court finds that the information he utilized in preparation of his report was directly obtained from Amy's attorney and her psychologist. This information was taken from interviews that the attorney and the psychologist had with Amy and her family. Dr. Smith then utilized government tables to do the calculations and arrive at a restitution figure. As a result, this Court finds that pursuant to the guidelines set down by the Eleventh Circuit in Hairston, his report is admissible.

50.    In respect to all of the hearsay objections made by the Defendant, this Court finds that the evidence is credible, bears a sufficient indicia of reliability based on the totality of the record, and that the Defendant had the opportunity to cross-examine each witness who testified in respect to an exhibit being offered. In the event that the Defendant chose to not cross-examine, as he did in respect to Dr. Smith's report being offered through the testimony of Mr. Marsh, that is a strategic decision that defense counsel made. It has no effect on this Court's decision as to whether or not the exhibit was properly admitted hearsay at a sentencing hearing.

51.    It is also important for this Court to point out that the Eleventh Circuit has distinguished hearsay admissible at sentencing proceedings as opposed to hearsay objections made at the trial phase of a criminal case. In United States v. Mandhai, 140 Fed. Appx. 54 (11th Cir. 2005), the Eleventh Circuit stated that its clear precedent that reliable hearsay can be considered during sentencing is distinguishable from the Crawford

19

v. Washington, 541 U.S. 36 (2004) decision of the United States Supreme Court. The Eleventh Circuit distinguished Crawford and stated in Mandhai that the Crawford decision addressed the admissibility of testimonial hearsay at trial, not the consideration of hearsay by the court at sentencing. Further, the Eleventh Circuit in Mandhai said that without any directive from the Supreme Court prohibiting consideration of hearsay at sentencing, its precedent in this area will continue to allow such evidence to be considered. This Court points this out since there is a recent decision by the United States Supreme Court in Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009) which held that affidavits submitted at the trial phase of a criminal case were not removed from the coverage of the Confrontation Clause. This Court has reviewed Melendez-Diaz in conjunction with the Eleventh Circuit's precedent concerning hearsay admissible at sentencings and finds no conflict. In this Court's view, Melendez-Diaz continues to deal with hearsay at the trial level and does not act as a prohibition to the hearsay being offered at the sentencing restitution hearing in this case. See also United States v. Kalaycioglu, 210 Fed. Appx. 825 (11th Cir. 2006).

52.    Restitution has been found to be a criminal penalty meant to have a strong deterrent and rehabilitative effect. It is not a civil matter even though restitution resembles a judgment for the benefit of a particular victim. It is penal rather than compensatory. United States v. Maestrelli, 156 Fed. Appx. 144 (11th Cir. 2005). This Court operates under the statutory provisions applicable which have been cited herein above. 18 U.S.C. § 2259 is referred to as the Mandatory Restitution Provision and in particular that statute states that issuance of a restitution order under this section is mandatory. This area of the law is relatively new. There has not yet developed a significant amount of appellate case law

20

on these issues of restitution in child pornography cases in the Eleventh Circuit Court of Appeals or other Circuits. There is no question that the Defendant pled guilty, was convicted and sentenced for an enumerated offense under the applicable chapters referenced by the restitution statute. The evidence against the Defendant is uncontroverted as to the underlying criminal conduct since he agreed to the written stipulated factual basis which was signed by him and filed at the time of his change of plea before the undersigned United States Magistrate Judge. The factual basis established his guilt in respect to the two counts of the Indictment as referenced at the beginning of this Report and Recommendation.

53.     This Court has no difficulty in finding that both Vicky and Amy were victims based upon the abuse caused by their respective perpetrators as referenced in more detail previously herein. There is no evidence in the record to controvert or question the facts concerning the abuse each suffered. Further, there is no evidence to contradict the continuing psychological traumas each of the respective victims suffer based upon the expert testimony received by this Court from Dr. Green and Dr. Silberg.

54.     The difficulty this Court has in finding that restitution is due from this particular Defendant relates to causation. This has been addressed by other District Courts as well as a couple of Courts of Appeals. This Court has difficulty attributing any of the acts committed by the Defendant in this case to be a proximate cause of any of the trauma that was suffered or continues to be suffered by either of these victims. This Court bases this finding upon the fact that all of the evidence received by this Court establishes that neither of these victims even knows the underlying facts of this particular case. Neither Vicky nor Amy know of this Defendant. Neither know of the criminal acts he perpetrated. Neither

21

know that this hearing was even taking place. This is substantiated by the testimony of witnesses at this hearing and can be found in the record.

55.    Section 2259 specifically defines a "victim" as an individual harmed as a result of a commission of a crime under this chapter. There are other provisions in § 2259(c), but they are not applicable to this discussion. This Court finds that Vicky and Amy as victims as defined under the statute must have their damages relate in some way, shape or form to the criminal conduct committed by the Defendant in this case. Otherwise, this would simply be a strict liability statute wherein anyone who was convicted of a crime under the applicable chapter would automatically be responsible for, in this case, Vicky's and/or Amy's damages even if their damages pre-date the criminal conduct for which a particular Defendant was charged and convicted. The exhibits admitted by this Court into evidence at this hearing clearly show that the vast majority of claims of losses/damages for both Vicky and Amy pre-date the date of criminal conduct charged in the Indictment as to this Defendant in this case. Further, none of the exhibits reference any specific knowledge that either Vicky or Amy have concerning this Defendant and his criminal conduct for which he has been convicted in this case. The testimony received by this Court indicates that neither Vicky nor Amy even know that this matter exists and is proceeding to a conclusion.

56.    In re Amy, 2009 WL 4928376 (5th Cir. 2009), the petitioner proceeding under the pseudonym Amy, which is the same victim Amy we are addressing in this matter, sought a writ of mandamus from the Fifth Circuit Court of Appeals after the District Court denied the request for restitution. It is interesting to note that the same amount of restitution and the same facts in respect to Amy are set forth in the Fifth Circuit's opinion.

22

The Fifth Circuit Court of Appeals agreed with the District Court's denial of restitution in that case and held that the District Court was correct when it stated as follows:

> "If the Court were to adopt Amy's reading of § 2259 and find that there is no proximate cause requirement in the statute, a restitution order could hold an individual liable for a greater amount of losses than those caused by his particular offense of conviction. This interpretation would be plainly inconsistent with how the principles of restitution and causation have historically been applied."

The Fifth Circuit agreed with the District Court and refused to issue the writ of mandamus.

57.     In United States v. Laney, 189 F.3d 954 (9th Cir. 1999), the court made a distinction and found restitution made pursuant to the sentencing guidelines does not require a causal connection between the defendant's acts and his relevant conduct. However, the Court then stated that this particular statute, 18 U.S.C. § 2259 does incorporate a requirement of proximate cause concerning the defendant's conduct and the respective damages being sought by the victim in restitution.

58.     In United States v. Vaknin, 112 F.3d 579 (1st Cir. 1997), the court was analyzing the Victim And Witness Protection Act, 18 U.S.C. § 3663, which is referenced in §2259 this Court is dealing with herein. In reviewing that particular restitution statute, the First Circuit held that a District Court should not order restitution under the statute with respect to loss to a victim which would have occurred regardless of the defendant's conduct. This Court believes that a reading of § 3663, et seq., is helpful because its provisions are virtually the same as those set forth in § 2259 which this Court is applying in this instance.

59.     The facts before this Court are that neither Vicky nor Amy have any knowledge of the Defendant's conduct in this case. As a result, this Court finds it difficult

23

to believe that any acts for which this Defendant has been convicted in this proceeding could reasonably have caused any of the continued psychological trauma to either Vicky or Amy.  The totality of the evidence received by this Court clearly indicates that their respective continued psychological trauma would occur regardless of whether or not this Defendant committed the criminal acts in this case in viewing and/or sharing the photos/videos of Vicky and Amy.  This is exactly the point that the First Circuit was making in Vaknin.  See also United States v. Cutter, 313 F.3d 1 (1st Cir. 2002).

60.     This Court is aware of Judge Moore's decision in United States v. Staples, 2009 WL 2837204, in which Judge Moore awarded the full amount of restitution for the government in respect to Amy.  This Court is not attempting to re-analyze Judge Moore's decision in reaching a conclusion in this case.  This Court is not aware of the particular facts presented to Judge Moore at the sentencing hearing in Staples wherein he found that Amy was harmed as the result of the criminal conduct engaged in by the Defendant Staples.  This Court can only accept the evidence presented in this case and attempt to analyze that evidence within the framework of existing case law this Court has been able to find guide it.

61.     In United States v. Van Brackle, 2009 WL 4928050 (N.D. Ga. 2009), the District Court was dealing with the very same factual situation we are presented with here under the same restitution statute.  The defendant in that case pled guilty to one count of receiving child pornography in violation of the appropriate statute and restitution was sought under § 2259.  While the District Court found that the claimants were statutory victims since they were harmed by the child pornography in question, the court found that there was a proximate cause requirement under § 2259.  The government in that case took

24

the position that § 2259(c) does not have a "proximate cause" requirement, but it did concede that § 2259(b)(3)(F) does state "any other losses suffered by the victim as a proximate result of the offense." The District Court in Van Brackle cited to the Ninth Circuit opinion in United States v. Laney, supra, which clearly defined § 2259 to require a causal connection between the offense of conviction and the victim's harm. Further, the District Court in Van Brackle stated that the Supreme Court in Hughey v. United States, 495 U.S. 411 (1990), held that a similar restitution provision under § 3664 limits the amount awarded in restitution to the loss covered by the specific conduct that is the basis of conviction. As a result, the District Court in Van Brackle denied the government's request for restitution.

62.     This Court could not find any Eleventh Circuit precedent on point in addressing the restitution issue in child pornography cases. There are other District Court opinions which have failed to award restitution, some of which involve these victims Vicky and Amy. This Court will attempt to go through them quickly for the District Court's review. It is clear from the testimony of both Ms. Hepburn and Mr. Marsh that numerous requests for restitution have been filed and only a portion of those have been granted thus far. This Court will rely upon the record to establish the specific amounts of losses which this Court has referenced above. In United States v. Ferenci, 2009 WL 2579102 (E.D. Cal. 2009), the District Court declined to award full restitution to Vicky as a victim based upon the lack of evidence of a causal connection between the offense of conviction and the victim's harm. The District Court cited the Ninth Circuit's opinion in Laney which this Court has referenced previously herein. In declining to award the full amount, the District Court in Ferenci then came up with a partial figure for restitution by attempting to make some mathematical apportionment which resulted in an award of $3,000. This Court finds that

25

to be inappropriate based upon the evidence submitted in this case and notes that there is no request for a lesser sum of restitution in the record. There is no expert testimony which will permit this Court to parse out damages by dates or by defendants. It would be inappropriate for this Court to do so without any factual or evidentiary basis. This Court sees the underlying issues in this case as being an all or nothing award of restitution under the applicable statute and evidence submitted in this case.

63.     Other courts have denied restitution based upon lack of proximate cause in respect to the  damages suffered by the victim and  the criminal conduct for which a defendant was convicted.  See United States v. Simon, 2009 WL 2424673 (N.D. Cal. 2009). The Simon case also involved a request for restitution from Amy.  In Simon, the District Court held that to justify a restitution order in such a case there must be some basis upon which there is an identification of a specific injury to the victim that was caused by the specific conduct of the defendant. As in the evidence presented to this Court, the evidence presented to the Simon court showed that the harm caused to Amy was from the conduct of others and that there was no evidence of any harm to Amy caused by the defendant in that case.

64.     United States v. Paroline, 2009 WL 4572786 (E.D. Tex. 2009) involved a request for restitution from Amy and the District Court declined to award restitution based upon the lack of evidence of proximate causation relating any of the specific acts of the defendant for which he was convicted to any of the damages sought by Amy. In United States v. Scheibt, 2010 WL 144837 (E.D. Cal. 2010), the District Court again found a lack of evidence establishing proximate cause relating the acts of the defendant for which he was convicted to any harms of the victims Vicky and Amy. The court declined to award full

26

restitution as requested. However, the court then made some mathematical computations and awarded a reduced sum of $3,000. As has been stated previously, this Court does not understand how a court can find no proximate cause for restitution in relation to the defendant's criminal conduct, but then perform a mathematical calculations to arrive at such a significantly reduced amount. This Court does not believe that the evidence presented in this matter justifies such a reduction by this Court.

65. In United States v. Brunner, 2010 WL 148433 (W.D. N.C. 2010), the District Court was presented with a restitution request by Vicky and Misty as victims under § 2259. The court found that the defendant's conduct was the proximate cause of both victims' injuries without any evidence that either victim had any knowledge of what the defendant in Brunner was doing. The court did find that the restitution amounts sought were reasonable, but then attempted to apportion liability among several defendants. The court in Brunner even admitted that Brunner's crimes involved possession of pornographic images and that he never had any contact with the victims in that case. The court went on to state that regrettably there are many individuals who possess similar images and then arrived at an apportioned restitution amount of $1,500 to Vicky and $6,000 to Misty.

66. This Court points out the decision in Brunner for the District Court in the case at bar to give an example of how some courts are attempting to apportion restitution claims. This Court does not believe that it has any evidence before it to justify an apportionment of any damages which the government is seeking as to each victim in total. This Court has no conceivable idea as to how many defendants may be involved in this type of criminal conduct. This would most certainly be the starting point for attempting to "apportion" damages amount various defendants who have committed criminal acts similar

27

to the Defendant. This Court finds that there is absolutely no factual or evidentiary basis in the record upon which this Court could conduct such an exercise in attempting to apportion damages.

67.     Another recent decision on the District Court level which this Court has reviewed is United States v. Berk, 2009 WL 3451085 (D. Me. 2009). The District Court was dealing with the same restitution claims under § 2259 on behalf of Vicky and Amy. The District Court in Berk went through a detailed analysis of the existing case law citing to many of the same cases this Court has cited concerning a requirement of proximate cause relating the defendant's criminal acts to the losses sustained by the victims Vicky and Amy. The District Court cited the U. S. Supreme Court case of Hughey, supra holding that restitution shall be awarded only for losses caused by specific conduct that is the basis of the offense of conviction. The Berk court also cited Judge Moore's decision in Staples to show that there is a full spectrum of decisions ranging on one end with a full award of restitution to a denial of any restitution. In between are the cases which attempt to parcel out or make some apportionment. The Berk court also cited the precedent in the First Circuit Court of Appeals which this Court has referenced above. In reaching its decision, Berk found that the government did not meet its burden of establishing specific losses proximately caused by the particular conduct of the defendant in the case before it.

68.     This Court agrees with the Berk decision not only as to a requirement of causation under § 2259, but also in its particular findings relating to courts which have attempted to "apportion" damages in respect to these particular claims for restitution. The court in Berk stated that it would be highly speculative and impossible to assess a reasonable restitution amount as to the defendant for the images he observed and

distributed because there was no evidence in the record before the <u>Berk</u> court identifying any specific injury to the victim which was caused by the specific conduct of the defendant. The <u>Berk</u> court then denied the government's claim for restitution.

69.     Based upon all of the foregoing, this Court finds that the government has not met its burden in establishing causation. Under the case law which has been cited and has provided some direction in this new area of the law, this Court finds that the government has not established that any of the losses suffered by Vicky and/or Amy are a proximate result of the criminal acts for which the Defendant was convicted in this case. While this Court does find that both Vicky and Amy are victims under the applicable statute and have suffered compensable losses as a result of the abusive acts of their respective perpetrators, there is no evidence in the record to justify this Court finding that any of the losses have any causal relation to any of the specific criminal conduct of the Defendant in this case.

70.     In concluding this Court's analysis, it is once again important to visit the timing issues which this Court referenced at the very beginning of this Report and Recommendation which relate to the deadline by which the District Court must enter an order regarding the government's claim for restitution. This Court finds that there is justification to shorten the time period for the parties to file any objections to this Report and Recommendation with the District Court. Unless this Court shortens the time period, the District Court will not have sufficient time within which to rule upon any objections filed in respect to this Report and Recommendation and issue its own order within the statutory time frame. This hearing was not set prior to sixty days at the specific request of the government as set forth in its motion and to which this Court notes the Defendant agreed

according to the government's motion.  Therefore, the first sixty days of the ninety day statutory period elapsed without any action in this case at the specific request of the government.  This Court finds that the ninety day statutory deadline established sufficient exigent circumstances to justify a shortening of the time period.  See Weiss v. Standard Ins. Co., 2009 WL 1833963 (S.D. Fla. 2009) and Grayson v. Cathcart, 2009 WL 4723271 (E.D. N.Y. 2009).  Based upon the exigent circumstances, this Court will require the parties file any objections to this Report and Recommendation with the District Court on or before 5:00 p.m. on Wednesday, February 3, 2010.

ACCORDINGLY, this Court recommends to the District Court that the Government's Request For Restitution [D.E. #33] be DENIED.

The parties shall have until **5:00 p.m. on Wednesday, February 3, 2010,** within which to file objections, if any, to this Report and Recommendation with the Honorable Donald L. Graham, the United States District Judge assigned to this case.

DONE AND SUBMITTED this _27TH_ day of January, 2010, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Carmen Lineberger
Jeffrey Battista, Esq.
U. S. Probation